Scipio E. SPINKS, Appellant,

v.

UNITED STATES POSTAL SERVICE, Appellee.

No. 77–3858.

United States Court of Appeals, Ninth Circuit.

June 19, 1980.

---

Ira M. Kleinman, Oakland, Cal., for appellant.

John Arbuckle, San Bruno, Cal., Robert S. Mueller, III, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before TUTTLE *, SKOPIL and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

The appellant, Scipio Spinks, is employed by the United States Postal Service in Oakland, California, as a supervisor. Until November of 1975, he worked on tour one (11 p. m. to 7:30 a. m.), when he was transferred to tour three (3:30 p. m. to midnight). Supervisors were then paid, in addition to their base pay, an hourly night differential premium for each hour worked at night. Since the transfer resulted in his working fewer nighttime hours, his night differential pay was reduced by approximately $14.00 per week as a result of the transfer. He filed this action in district court seeking review of the transfer on various grounds. We affirm the district court's granting of summary judgment in favor of the Postal Service.

Spinks' only contention which merits any extended discussion is that the transfer was an "adverse action" within the meaning of the Postal Service Regulations and that he was therefore entitled to the additional grievance procedures, including a hearing, afforded those aggrieved by "adverse actions."

The Postal Service Manual at the time relevant to this litigation defined "adverse actions" as those involving "discharges, suspension of more than 30 days, furloughs without pay or reductions in rank or pay." P.S.M. Part 444.221. Spinks contends that his transfer constituted a "reduction in pay" within the meaning of the regulation because as a result of the transfer his premium pay was reduced. The government stresses that there was no reduction in Spinks' base pay and that efficiency would be seriously impaired if management did not have discretion to reassign supervisors among various work locations and shifts.

We agree with the government's position that a diminution of premium pay hours as the result of a shift transfer does not constitute a "reduction in pay" necessitating application of the grievance procedures reserved for "adverse actions." The premium pay is designed to offset the burdens of working generally disadvantageous hours. The services which Spinks rendered on each shift were essentially the same; there is no question that his rank remained the same. Our views are in accord with those expressed by the Court in *Duncan v. Blattenberger*, 141 F.Supp. 513 (D.D.C.1956), construing a comparable section of the Veterans Preference Act. Although its holding rested on other contractual grounds the Court expressed considerable doubt as to whether a change in shift reducing total compensation but not base pay was within the scope of personnel actions which would amount to a demotion.

* Honorable Elbert Parr Tuttle, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

We note also that the Postal Service Manual definition of "adverse action" is very similar to that contained in the Civil Service Act, 5 U.S.C. § 7512; in particular, section 7512 defines "adverse action" to include a "reduction in pay." The Civil Service Act now contains a definition of "pay" as "basic pay." 5 U.S.C. § 7511. Legislative history indicates that the definition was added for clarification and was contained in existing regulations and policies. [1978] U.S.Code Cong. & Admin.News p. 2770. Although the government does not rely upon any applicable similar definition of pay in existence at any time relevant to this suit, the statutory definition in 7511 provides guidance, and there is no reason why an inconsistent construction of the term "pay" should be applied in this case.

■ The remaining theories presented by Spinks to obtain review of his transfer are without merit. Spinks argues that he has a contractual right to work on tour one, but he presented nothing to the trial court to create a genuine issue of material fact that he had such a contractual right. Spinks also argues that he had a constitutional right to a hearing on the transfer. While the constitution may in some cases require that certain procedures be met before a government employee may be fired, see *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), no constitutional issue is presented by a routine government personnel action such as Spinks' transfer.

■ Spinks also argues that the transfer was an abuse of discretion. The district court correctly concluded that it had no jurisdiction to consider this argument because judicial review for abuse of discretion is precluded by 39 U.S.C. § 410(a). There may be cases in which review is possible notwithstanding § 410(a), *see, e. g., NAACP v. United States Postal Service*, 398 F.Supp. 562 (N.D.Ga.1975) (constitutional violations); 39 U.S.C. § 1005(a)(1) ("adverse ac-

tions"), but none of these exceptions apply to Spinks.

Affirmed.

TUTTLE, Circuit Judge, dissenting:

With deference I dissent. The relevant statute, 39 U.S.C. § 1001(b), provides that the Postal Service shall grant an aggrieved employee a hearing in cases involving "adverse actions." The Postal Service Manual defines adverse actions as those involving "discharges, suspensions of more than 30 days, furloughs without pay or *reductions in* rank or *pay*." PSM, part 444.221. [Emphasis added.] By the transfer, Spinks' annual earnings were reduced by approximately $788 per annum. I can find no justification in reading the words "reduction in pay" as not having application to Spinks' reduction in pay of this amount. These regulations, obviously for the protection of the employee, should be given a literal application when the employee's rights are involved and are favored by such interpretation.