641 F.2d 1061
 28 Cont.Cas.Fed. (CCH) 81,088
 SPENCER, WHITE & PRENTIS, INC. and Seatec International,
Ltd., a Joint Venture, and Morrison-Knudsen
Company, Inc., Plaintiffs-Appellants,
v.
UNITED STATES of America ENVIRONMENTAL PROTECTION AGENCY,
Southwest Sewer District in the County of Suffolk, aka
County Sewer District No. 3, County of Suffolk of the State
of New York, and Great American Insurance Company,
Defendants-Appellees.
 No. 157, Docket 80-6099.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 15, 1980.
Decided Feb. 10, 1981.
 
 Marian Lewis, New York City (Tunstead & Schechter, New York City, of counsel), for appellants.
 Richard H. Dolan, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Miles M. Tepper, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee United States Environmental Protection Agency.
 Erick F. Larsen, Asst. County Atty., County of Suffolk, Hauppauge, N. Y. (David J. Gilmartin, Suffolk County Atty., Hauppauge, N. Y., of counsel), for appellee County Sewer District.
 Henry James Wallach, New York City (Harold Aspis, Hart & Hume, New York City, of counsel), for appellee Great American Ins. Co.
 Before LUMBARD, MANSFIELD and MESKILL, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Plaintiffs, Spencer, White & Prentis, Inc. (Spencer), a joint venture with its subsidiary Seatec International Ltd., and Morrison-Knudsen Company, Inc., were bidders on a contract for completion of a federally subsidized sewer system being constructed for the County of Suffolk, New York (Suffolk), a state subdivision.[1] Plaintiffs claim that their bids were rejected by Suffolk in favor of another joint venture, Edward B. Fitzpatrick, Jr. Construction Corp. and Arundel Corp. (Fitzpatrick-Arundel), as the result of fraud, contractual invalidity and violation of regulations issued under the Federal Water Pollution Control Act, 33 U.S.C. §§ 466, et seq. (Act). After failing to obtain relief from the United States Environmental Protection Agency (EPA), which had granted funds under the Act for the project and therefore exercised some supervisory administration over it, plaintiffs sued that Agency, Suffolk and the Great American Insurance Company (American), surety for Fitzpatrick-Arundel, to whom the contract was let by Suffolk after renegotiation. Plaintiffs sought damages and declaratory relief. Judge Henry Bramwell granted summary judgment in favor of the defendants dismissing the action on the ground that rejection of plaintiffs' bids was, as found by the EPA Regional Administrator, for "good cause" under the Act. We affirm.
 
 
 2
 In 1977 Fitzpatrick-Arundel was awarded a contract by Suffolk to lay sewer pipe for the county's federally subsidized water pollution control project in Great South Bay, near Islip, New York. As low bidder it agreed to construct the sewer pipe portion of the project for $10,646,000. Defendant Great American Insurance Company was the surety for Fitzpatrick-Arundel's bid. The sewer pipe was part of a water pollution control project to be constructed for Suffolk's Southwest Sewer District No. 3 at an estimated cost of $307,600,000, of which.$230,700,000 would be reimbursed by the EPA to Suffolk under the terms of the Federal Water Pollution Control Act, 33 U.S.C. §§ 466, et seq., and the Clean Water Act, 33 U.S.C. § 1282.
 
 
 3
 In April, 1979, Suffolk announced that it considered Fitzpatrick-Arundel to be in default for inadequate progress on the job. Negotiations then began with the surety, American, to determine the future course of the project. When these negotiations reached an impasse, Suffolk advertised for bids to complete the unfinished part of the project, without announcing that it was still negotiating with the surety or that its solicitation of bids was only tentative. Spencer was the lowest responsive bidder at $13,850,000, and plaintiff Morrison-Knudsen Company was second lowest at $27,000 more.
 
 
 4
 Meanwhile Suffolk continued negotiations with the surety. On July 27, 1979, Spencer filed with Suffolk a bid protest, as permitted by 40 C.F.R. § 35.939,[2] issued by the EPA under the Act, asserting that it should be awarded the contract. On August 9, Suffolk and the surety signed a new contract, in which Fitzpatrick-Arundel was reinstated to complete the job. Pursuant to 40 C.F.R. § 35.939(h), Spencer asked the EPA to send Suffolk and the surety a letter prohibiting them from executing the new contract until 10 days after delivery of the protested decision to the parties in interest. The EPA did so. The parties disagree over whether Suffolk complied with this requirement, with Spencer claiming that the contract was executed on August 9 and Suffolk claiming that only the surety executed the contract on August 9, while Suffolk waited until September 18 to execute the contract for its part. On August 13, 1979, Suffolk informed plaintiffs that it was rejecting their protest.
 
 
 5
 Spencer next filed a protest appeal with the Regional Administrator of the EPA which, as the funding agency, performs a general supervisory function over such projects. Spencer claimed that the surety had waived its right to complete the job by failing to reach an agreement with Suffolk prior to the latter's advertisement for new bids, that Suffolk had waived its right to continue negotiations with the surety for completion of the job by failing to require the surety to complete the job before advertising for new bids, that Suffolk had engaged in bid fraud by advertising for new bids without disclosing that it was still negotiating with the surety, and that Suffolk's rejection of the bids was not based on "good cause," as required by § 35.938-4(h)(2), which states "Unless all bids are rejected for good cause, award shall be made to the low, responsive, responsible bidder." Jurisdiction to protest before the Administrator was premised upon this provision and on the bid advertisement's statement, in conformity with 40 C.F.R. § 35.938-4(b)(5), that the procurement would be "subject to regulations contained in 40 C.F.R. 35.936, 35.938, and 35.939."
 
 
 6
 The Regional Administrator rejected plaintiffs-appellants' claim, finding that Suffolk had acted with good cause in rejecting all bids for the completion contract. He accepted Suffolk's argument that it felt constrained to let the surety continue with the contract because it believed Fitzpatrick-Arundel would sue it for wrongful termination and knew that a victory for Fitzpatrick-Arundel in that suit would cancel the surety's obligation, leaving the county with a bill for significantly more than the $10,646,000 originally budgeted. By agreeing with the surety to let Fitzpatrick-Arundel continue with the job, the Regional Administrator observed, Suffolk was increasing the likelihood that any costs above the originally budgeted amount would be borne by the surety rather than by Suffolk County taxpayers. Having found the County's rejection to be supported by good cause, he declined to rule on whether Spencer's procurement procedures violated federal law. Finally, in exercise of his duty under federal regulations, the Administrator declined to examine issues which rested primarily on state law. Accordingly, he dismissed all claims against Suffolk and the surety.[3]
 
 
 7
 Appellants' suit in the federal district court challenged the Regional Administrator's decision, seeking damages and declaratory relief. On May 29, 1980, Judge Bramwell upheld the Regional Administrator in an order granting summary judgment to the defendants. Judge Bramwell rejected defendants' jurisdictional attacks on the appellants' case, but agreed that the bid rejection was supported by good cause and was not arbitrary or capricious.
 
 DISCUSSION
 
 8
 The role of the federal government in overseeing bidding for construction contracts partially funded under the Federal Water Pollution Control Act is narrowly circumscribed. Once the EPA has granted funds to projects like the parent project in the present case for the pipeline job in Great South Bay, it plays only a general supervisory role over the administration of the projects. Federal regulations explicitly relegate most decisionmaking and conflict resolution to the states. The state or municipal agency runs the project, makes budget adjustments, and monitors the submission and awarding of bids. Localities are permitted to use their own procurement systems and procedures as long as they meet the threshold federal standards, 40 C.F.R. § 35.936-2(a). The Regional Administrator relies on a grantee's determination regarding the application of state or local law to issues which are primarily determined by such law, 40 C.F.R. § 35.936-2(b). The locality (such as Suffolk) is given primary responsibility for the administration and completion of the project and is required to resolve all disputes including those involving invitations for bids and selection of contractors, § 35.936-5(a). To underscore the essentially passive, reviewing function of the EPA, see § 35.936-6, the regulations and the advertisement for bids provide that neither the EPA nor the United States is a party to the contract for construction of the project, §§ 35.936-8, 35.938-4.
 
 
 9
 Here, state law amply proscribes bid fraud and other improper bidding practices, see N.Y.Gen.Mun.L. § 103,[4] so that we need not examine the plaintiffs' claims with respect to these alleged violations. Our role is therefore limited to that of determining whether the Regional Administrator acted arbitrarily or capriciously in finding good cause for Suffolk's rejection of all completion bids, 5 U.S.C. §§ 702-06, and leaving the plaintiffs free to pursue their state law claims in the state court. Appellees insist that we should not reach the merits of this issue, because sovereign immunity bars this suit against the EPA, and because disappointed bidders like Spencer and Morrison-Knudsen have no standing to sue in federal court. We reject these contentions as inapplicable when the disappointed bidder sues under the Administrative Procedure Act, 5 U.S.C. §§ 702-06, attacking final agency action under regulations that explicitly provide for private rights of action.
 
 
 10
 Appellees' argument that this appeal is barred by sovereign immunity rests on our recent decision in Estate of Watson v. Blumenthal, 586 F.2d 925 (2d Cir. 1978). However, that case held only that the 1976 amendments to the Administrative Procedure Act waiving sovereign immunity defenses in actions brought under the Act did not eliminate that defense in actions brought under the federal question statute, 28 U.S.C. § 1331. Those same amendments make sovereign immunity an untenable defense here in an action which is based essentially on an alleged erroneous ruling by a federal agency. See Brown v. Chrysler Corp., 441 U.S. 281, 317, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979); Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).
 
 
 11
 Appellees' alternative claim that Spencer and Morrison-Knudsen lack standing to appeal is based on the Supreme Court's holding in Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), to the effect that unsuccessful bidders for government contracts have no standing to challenge federal procurement action pertaining to the award of any contract. The Court stressed in that case that bidding procedures were for the benefit of the public generally, not for the benefit of the bidders. However, Perkins antedated the passage of the Administrative Procedure Act, which expands federal judicial review of final agency actions. In Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C.Cir.1970), the District of Columbia Circuit held that Perkins did not survive the Act, which was enacted for the purpose of guaranteeing recourse to the courts for plaintiffs injured by government officials' failure to follow their own regulations. Five other circuits have followed this rule. Merriam v. Kunzig, 476 F.2d 1233 (3d Cir.), cert. denied, 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973); Wilke, Inc. v. Department of the Army, 485 F.2d 180 (4th Cir. 1973); Hayes International Corp. v. McLucas, 509 F.2d 247 (5th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975); Airco, Inc. v. Energy Research and Development Administration, 528 F.2d 1294 (7th Cir. 1975); Armstrong & Armstrong, Inc. v. United States, 514 F.2d 402 (9th Cir. 1975). Meanwhile, the Sixth Circuit, in Cincinnati Electronics Corp. v. Kleppe, 509 F.2d 1080 (6th Cir. 1975), has adopted a somewhat narrower view:
 
 
 12
 "(W)e do not hold that Section 10 of the APA confers standing on every disappointed bidder for government contracts to seek review of agency action.... Standing is conferred by Section 10 only when a relevant statute indicates congressional intent that the person or firm seeking review comes within the zone of interests sought to be regulated or protected. Absent such a congressionally created exception, the general rule of Perkins v. Lukens Steel, supra, that a disappointed bidder has no legally enforceable right against the government's award of a procurement contract retains its validity." 509 F.2d at 1086.
 
 
 13
 We have not yet determined whether Perkins retains validity in the face of the Administrative Procedure Act, see Morgan Associates v. United States Postal Service, 511 F.2d 1223, 1225 n.3 (1975) (reserving the question of whether to follow Scanwell ). However, we need not resolve that issue here since even under the Cincinnati Electronics test plaintiffs-appellants had standing to file a protest with the EPA Regional Administrator against Suffolk's rejection of their bid and to obtain judicial review of the Administrator's adverse ruling on their protest. Title 40 C.F.R. § 35.939(a) states, "A protest based upon an alleged violation of the procurement requirements of §§ 35.936 through 35.938-9 of this subpart may be filed (with the EPA Regional Administrator) against a grantee's procurement action by a party with an adversely affected direct financial interest." As grantee, Suffolk took action which had an adverse effect on the plaintiffs. If the Administrator had ruled in favor of the protesting plaintiffs, Suffolk as grantee would have been obligated to abide by the decision, 40 C.F.R. § 35.939(e)(5) or seek review. The Administrator's resolution of the protests thus is clearly final agency action subject to review under the Administrative Procedure Act, 5 U.S.C. §§ 702, 704. The Regional Administrator here plainly considered his decision to be final agency action, and so stated in his opinion. Similarly, the regulations explain how the Administrator's decisions are to be judicially reviewed in language very close to that of the Administrative Procedure Act:
 
 
 14
 "The decision of the Administrator or his duly authorized representative for the determination of such appeal shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent or capricious, or arbitrary, or so grossly erroneous as to imply bad faith, or not supported by substantial evidence." 40 C.F.R. § 30.1120. Compare 5 U.S.C. § 706.
 
 
 15
 We therefore conclude that neither sovereign immunity nor plaintiffs' standing precluded Judge Bramwell from reviewing the narrow question of whether the Regional Administrator acted arbitrarily or capriciously or abused his discretion when he held that Suffolk's rejection of all bids on the completion contract was supported by good cause. As a result, we proceed to the merits of Suffolk's claims.
 
 
 16
 In ruling against the plaintiffs on the merits, Judge Bramwell offered four creditable reasons why the rejection of all completion bids in favor of a renegotiated deal with Fitzpatrick-Arundel made good sense:
 
 
 17
 (1) it offered Suffolk a $4 million savings over what the project would cost if plaintiff Spencer were given the job;
 
 
 18
 (2) the immutability of the amount of federal funds available for the project made such a savings desirable;
 
 
 19
 (3) the reinstatement of Fitzpatrick-Arundel apparently involved less start-up time than that needed by plaintiff Spencer;
 
 
 20
 (4) the prospect of extensive litigation with Fitzpatrick-Arundel over the propriety of Suffolk's earlier termination of it and over the resultant obligation of the surety could be both expensive and risky for Suffolk.
 
 
 21
 We are satisfied that neither the Regional Administrator nor Judge Bramwell erred in finding that these circumstances constituted good cause.
 
 
 22
 Appellants protest that Suffolk's decision to reject all bids cannot be supported by good cause if its effect is to allow a kind of bid fraud. To permit a county to take such action, they claim, means that it can fail to disclose material information to bidders on completion contracts, such as its continuation of negotiations with the surety, and it can thus allow a surety to hold off deciding whether to complete its contractual obligations until a new round of bidding shows the surety exactly how much its alternative courses of action will cost. Meanwhile, good faith bidders who spend hundreds of thousands of dollars determining exactly how much they should bid on completion projects will be deterred from submitting bids unless they can be sure that the lowest bid will be honored. While this line of argument has initial appeal, we reject it for the reason that it ignores the availability of state courts to litigate claims by disappointed bidders of fraud or of other impropriety in bidding procedures. A ruling in plaintiffs' favor, incorporating state law into the federal determination of whether the bids were rejected for "good cause," would contravene valid EPA regulations plainly designed to avoid the EPA's becoming involved in such disputes, at least when state law and state facilities are available for their resolution. 40 C.F.R. § 35.939(k) (see footnote 3, supra) authorizes the Administrator to dismiss a protest based upon action of a grantee such as Suffolk which "primarily involves issues of state or local law." Here the Administrator did not abuse his discretion in concluding under the authority of §§ 35.939(j)(3) and 35.939(k) that plaintiffs' claims of fraud on the part of Suffolk, waiver by the surety of its right to complete performance, and waiver by Suffolk of its right to continue negotiations with the surety, raised issues that should be decided by state tribunals according to state law.[5]
 
 
 23
 In view of our disposition of the claim that the bid rejection was supported by good cause, any federal basis for the pendent state claims asserted by Spencer and Morrison-Knudsen disappear, and the complaint was therefore properly dismissed. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).
 
 
 24
 We are left with the contention by plaintiff Morrison-Knudsen that it should be allowed to continue prosecuting its state law claims on the basis of its diversity of citizenship with the defendants. While we agree that Morrison-Knudsen is diverse as to the defendants-appellees, we see no reason to let it now sever itself from the non-diverse plaintiff-appellant Spencer when it never moved under Rule 21, F.R.Civ.P. for such a severance before the trial court. Meyercheck v. Givens, 180 F.2d 221, 223 (7th Cir. 1950). Our dismissal is without prejudice to Morrison-Knudsen's right to test its unresolved state claims against diverse defendants in another action.
 
 
 25
 Affirmed.
 
 
 
 [1]
 Although the County of Suffolk is also known for purposes of the contract in this case as "County Sewer District No. 3," we for the sake of simplicity describe both as "Suffolk."
 
 
 [2]
 " § 35.939 Protests
 "(a) General. A protest based upon an alleged violation of the procurement requirements of §§ 35.936 through 35.938-9 of this subpart may be filed against a grantee's procurement action by a party with an adversely affected direct financial interest."
 
 
 [3]
 40 C.F.R. § 35.939(j)(3) provides:
 "(j) Limitation. A protest may not be filed under this section with respect to the following:
 (3) Issues primarily determined by State or local law or ordinances as to which the Regional Administrator, upon review, determines that there is no contravening Federal requirement and that the grantee's action has a rational basis."
 Similarly, § 35.939(k) states:
 "(k) Summary Disposition. The Regional Administrator may summarily dismiss a protest, without proceedings ..., if he determines that the protest is untimely, frivolous or without merit for example, that the protested action of the grantee primarily involves issues of State or local law."
 The Regional Administrator first rejected Spencer's claims that the surety had waived its right to complete the contract, and that Suffolk had an obligation to demand performance by the surety before advertising for new bids, stating:
 "Whether or not there was such a 'waiver' by the surety or such an 'obligation' on the Grantee (Suffolk) are issues primarily determined by State law. The EPA bid protest procedure is not the proper forum to decide such issues. They are subject to the limitation in § 35.939(j)(3) and are hereby dismissed."
 He then more broadly dismissed Spencer's claims having a parallel in state law:
 "Spencer has also referred to possible claims it may have as against the Grantee or the surety. To the extent that such claims exist and may be pursued, this protest proceeding is not the proper forum for the resolution of Spencer's claims."
 
 
 [4]
 " § 103. Advertising for bids; letting of contracts; criminal conspiracies
 "1. Except as otherwise expressly provided by an act of the legislature or by a local law adopted prior to September first, nineteen hundred fifty-three, all contracts for public work involving an expenditure of more than five thousand dollars and all purchase contracts involving an expenditure of more than three thousand dollars, shall be awarded by the appropriate officer, board or agency of a political subidivision or of any district therein including but not limited to a soil conservation district, to the lowest responsible bidder furnishing the required security after advertisement for sealed bids in the manner provided by this section."
 
 
 [5]
 We are similarly unpersuaded by appellants' reference to PRM 78-8, a policy memorandum published at 43 Fed.Reg. 14725 (April 7, 1978) that suggests guidelines for rejection of all bids for a project. The PRM begins by expressing the EPA's distaste for decisions to reject all bids, and then lists several reasons for rejection that would constitute acceptable good cause. Appellants attempt to make much of the absence from that list of a scenario like the one in this case, and of the PRM's statement that "Good cause for rejection of all bids may not be found where the following is evidenced: (1) Litigation is instituted concerning contract award, although litigation may prove a proper ground for rejection of all bids where prolonged."
 Neither of these comments by appellants regarding PRM is sufficient to warrant a reversal of the Regional Administrator here. The list of reasons which constitute good cause does not purport to be exhaustive or exclusive. Moreover, though litigation may not be good cause, the belief that one course will result in litigation that might saddle Suffolk with huge uninsured liability certainly constitutes good cause for trying to avoid such risks.