Robert A. LUTZ, Plaintiff,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

No. 81 C 757.

United States District Court,
E. D. New York.

May 14, 1982.

Jack B. Solerwitz, Mineola, N. Y., for plaintiff.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for defendant by Marilyn Go, Asst. U. S. Atty., Brooklyn, N. Y., with assistance of Sally Buckman, Law Student, New York University School of Law.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff sues for money damages and injunctive relief directing the United States Postal Service to refrain from alleged unlawful employment practices and to appoint him to a position as a postal inspector. After answer, defendant moved for summary judgment dismissing the action, principally on the ground that the doctrine of sovereign immunity required dismissal of the suit for lack of jurisdiction. For the following reasons, which differ somewhat from arguments the parties primarily advanced, the Court concludes that the action must be dismissed.

The pleadings disclose that the parties are in substantial agreement about the basic facts, almost all of which were established through the documentary material plaintiff attached to his complaint. Although lacking some specific details, the following outline will suffice to place this case in perspective. In 1974 plaintiff was employed by the United States Postal Service as a security police officer. Since he first considered employment with defendant in 1972, however, his goal—still unrealized—has been to become a postal inspector. The present suit arises because of defendant's continued rejection of plaintiff's applications and failure to appoint him to that position.

Plaintiff does not complain that defendant did not explain the reasons for the unsuccessful outcome of his applications. And he could not reasonably do so, for the record is clear that defendant fully explained them. Budgetary restrictions limiting the number of postal inspector appointments and the large pool of already eligible candidates prompted defendant to discourage plaintiff even from submitting an application the first time he inquired about the job. Next, after plaintiff had been a security officer for two years and had first formally applied for the position, inspectors who conducted background investigations of plaintiff reported their recommendations that he not be considered favorably for the position. The ensuing denial of the application was conveyed to plaintiff in terms of the "severe" competition for the limited number of vacancies, which permitted selection only of candidates with the "highest" qualifications.

The investigators' written reports, which were disclosed to plaintiff, apparently at his request, indicate an important reason for the unfavorable recommendations was the negative physical report of the Postal Service's examining physician, who referred to a nervous twinge in plaintiff's back, and an apparently separate back condition for

which plaintiff had received a disability award from the Veterans Administration. The reports also included unfavorable comments about plaintiff's judgment, attitude and maturity from co-workers and others.

Defendant continued to emphasize the "intense" competition for the limited number of positions when plaintiff sought renewed consideration of his application. In addition, the regional Chief Inspector wrote plaintiff explaining the "many factors" considered in evaluating the qualifications of a candidate for inspector; i.e., "experience, type of degree, attitude, oral expression, results of personal interview." He also noted the "considerable weight" given to plaintiff's back condition, which by itself made plaintiff "noncompetitive" for the job.

After plaintiff furnished satisfactory medical proof that no back conditions disabled him from the work of an inspector, he was placed on the eligible register for the period of one year. He also was told that this status did not guarantee appointment but only further consideration. About the same time, plaintiff achieved an "85" on a qualification rating form, which purported to account for education, work experience and an examination. Plaintiff's score apparently put him among the top six of those with whom he was rated. Nevertheless, despite acquiring an MBA degree, plaintiff was not selected for any of the training classes before his eligibility expired.

Neither the regional Chief Inspector or the Chief Inspector had explicitly referred to the negative comments about plaintiff's attitude revealed in his file. On the other hand, although plaintiff submitted his own affidavit, he did not contradict that of Craig Smith, a manager in the Personnel and Support Services Branch of the Postal Inspection Service. Smith, who interviewed plaintiff in April 1979 before the year of eligibility expired, said he had explained that the selection committees had deemed other applicants more qualified than plaintiff and that comments in the plaintiff's file indicated his personality traits made him appear "too overbearing" for a postal inspector. According to Smith, plaintiff said he was aware of "coming on too strong" but thought he could control it.

In challenging defendant's actions, plaintiff asserts that defendant abused its discretion in not selecting him, and violated its own merit hiring and advancement policies by selecting others who ranked below him on the qualification rating form. To blunt the import of the fact that defendant informed him of the reasons for not selecting him, plaintiff further argues that there is a genuine issue of material fact as to the actual reason he did not receive favorable action.

Against this background, we turn to a consideration of the government's contentions challenging the Court's power to entertain plaintiff's complaint, which alleges that federal jurisdiction exists by virtue of 28 U.S.C. §§ 1331, 1346, 1361, 2201. In addition, the passage from *Spencer, White & Prentis, Inc. v. United States*, 641 F.2d 1061, 1065 (2d Cir. 1981), included in plaintiff's brief, fairly indicates that he also is relying upon general principles of administrative review and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, asserting that his action is "based essentially on an alleged erroneous ruling by a federal agency." 641 F.2d at 1065.

 If the foregoing were all that plaintiff could rely upon to sustain jurisdiction against the assertion of sovereign immunity, it is clear that the complaint would have to be dismissed on that basis.[1] First, it is well settled that the Declaratory Judgment Act, 28 U.S.C. § 2201, "does not provide an independent basis for federal jurisdiction but simply increases the remedies available to a litigant." *Estate of Watson*

---

1. Plaintiff has not alleged any unfair employment practice based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, or the Rehabilitation Act of 1973, 29 U.S.C. § 791 or 39 U.S.C. § 1003(b). To the extent that any claims may exist under these provisions, it is clear that plaintiff's undisputed failure to exhaust administrative remedies bars relief in this court at the present time. See *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

v. Blumenthal, 586 F.2d 925, 928 (2d Cir. 1978), citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). It is equally well settled that the other jurisdictional statutes specified in the complaint, §§ 1331, 1361 and 1346, do not by themselves waive the sovereign's immunity to suits arising under federal law, as this one purports to be. See Doe v. Civiletti, 635 F.2d 88, 93–95 (2d Cir. 1980).[2] Furthermore, the waiver of sovereign immunity in the APA, 5 U.S.C. § 702, is no help to plaintiff here, because the APA itself is not an independent basis for jurisdiction, Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1978). Thus, authority for plaintiff to maintain his suit against the sovereign must be sought elsewhere.

■ The jurisdictional bar of sovereign immunity raised by defendant is, however, insufficient to require dismissal of this suit. In reorganizing the old cabinet-level Department of the Post Office into the present United States Postal Service, as "an independent establishment of the executive branch," 39 U.S.C. § 201, Congress specifically provided that the Postal Service "shall have" the general power "to sue and be sued in its official name." 39 U.S.C. § 401(1). Long before Congress reorganized the Postal Service, the Supreme Court consistently interpreted "sue and be sued" in statutes creating federal corporations, agencies and instrumentalities, as a general waiver of the sovereign's immunity as to the entity, see, e.g., Keifer & Keifer v. R. F. C., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939). Indeed, in specifically reviewing this provision in the Postal Service's governing statute in Beneficial Finance Co. of New York v. Dallas, 571 F.2d 125 (2d Cir. 1978), the Court of Appeals found "no proper alternative" to the accepted construction of "sue and be sued" and held that the Postal Service was not immune to a garnishment suit.

In these circumstances, it cannot be said, as defendant urges, that plaintiff failed to include in his complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends" as required by Rule 8(a)(1), F.R.Civ.P. Contrary to the narrow view of the complaint defendant favors, "it is our duty to read it liberally, to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded." New York State Waterways Association, Inc. v. Diamond, 469 F.2d 419, 421 (2d Cir. 1972). Cf. Marbury Management, Inc. v. Kohn, 629 F.2d 705, 712 n. 4 (2d Cir. 1980) (complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim).

■ Here, there could be no question that the complaint properly named the Postal Service as the entity responsible for the alleged "unlawful" employment practice of which plaintiff complains. Accordingly, federal district court jurisdiction was available under the literal terms of 39 U.S.C. § 409(a), which provides for original, non-exclusive jurisdiction in the United States district courts "over all actions brought by or against the Postal Service."

Nevertheless, the conclusion that a jurisdiction conferring statute provides a basis to hear a claim clearly does not end judicial inquiry and permit the litigation to continue unchecked. As the Supreme Court long ago recognized in Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), once the issue of jurisdiction is resolved in plaintiff's favor, there still remains the question whether "the suit raises issues amenable to judicial resolution [determination of which is] . . . a judgment on the merits." National Association of Postal Supervisors v. United States Postal Service, 602 F.2d 420, 429 (D.C.Cir.1979). Accord,

---

2. The waiver of sovereign immunity in 28 U.S.C. § 1346(a)(2) merely gives district courts concurrent jurisdiction with the Court of Claims over actions based upon contracts, less then $10,000.00, and does not permit suits against the sovereign otherwise based upon federal law. See United States v. Testan, 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976).

*Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir., 1981):

"If in fact the statutes relied upon by the plaintiffs did not authorize recovery ... because of violations of the sort alleged, the complaint failed to state a claim upon which relief can be granted and was subject to dismissal on that ground. However, as defendants would have been the first to assert if they had prevailed in that position and plaintiffs brought another action for the same relief, the dismissal would have been upon the merits and not for lack of jurisdiction."

But *cf. Peoples Gas, Light and Coke Co. v. United States Postal Service*, 658 F.2d 1182 (7th Cir. 1981) (requiring "substantive legal framework," *e.g.*, regulations outlining discretion, on which case can be decided, before jurisdiction could be based upon 28 U.S.C. § 1339 or 39 U.S.C. § 409(a)).

The question to be resolved, therefore, is whether the existence of jurisdiction to entertain this claim permits judicial review of what is, essentially, allegedly erroneous agency conduct. In this connection the Court of Appeals for the District of Columbia Circuit, in a suit against the Postal Service, observed that "the well-established presumption favoring judicial oversight of administrative activities," triggered by a jurisdiction-conferring statute, "operates differently depending on a judicial determination of congressional intent, the functional needs of the agency for flexibility and discretion, and the capacity of courts to resolve them," *NAPS v. USPS, supra*, 602 F.2d at 429, an approach followed with approval by the Seventh Circuit in *Peoples Gas, Light & Coke, supra*. *Accord, Kletschka v. Driver*, 411 F.2d 436, 443 (2d Cir. 1969) (review of Veterans Administration transfer order under APA).

■ A preliminary issue concerning the availability of review is raised by 39 U.S.C. § 410(a), which declares that "no federal law ... including the provisions of [the APA] shall apply to the exercise of the powers of the Postal Service." As the courts which previously have considered this matter have held, however, the possibility of review of the merits of the USPS decision not to approve plaintiff's application to become a Postal Inspector is not necessarily foreclosed by this provision. "[A]n agency's exemption from [the APA] does not negate the applicability of common law review principles that preexisted and operate apart from [their] subsequent codification" in the APA. *Peoples Gas, Light & Coke, supra*, 658 F.2d at 1190–91 & nn. 4, 5. See *Burns v. United States Postal Service*, 380 F.Supp. 623, 626 (S.D.N.Y.1974). *Accord, NAPS v. USPS, supra*, (considering issue of reviewability without reference to § 410(a)). *Contra, Spinks v. United States Postal Service*, 621 F.2d 987, 989 (9th Cir. 1980).

Nevertheless, the circumstances of this case demonstrate that this action must be dismissed. Plaintiff does not complain that defendant did not have merit hiring and advancement policies in place, but rather that defendant "abused its discretion" under the policies it did have, by concluding that others were better qualified than plaintiff for the position he sought. Although plaintiff argues that a genuine issue of fact exists as to the "actual" reason he was not selected, to postpone dismissal and permit discovery solely for that purpose would be to approve a scope of judicial oversight at odds with precedent and the purpose reasonably to be ascribed to Congress in permitting the Postal Service to be sued. Even in the absence of a clear statutory command that judicial review of the kind plaintiff seeks is unavailable, such congressional intent is clearly to be inferred from the "overall purpose or design of the relevant statute as viewed within the context of the entire legislative scheme," *Abbot Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), and from the "traditional reluctance of courts to scrutinize lawful agency decisions on internal management matters," *NAPS v. USPS, supra*, 602 F.2d at 432, and personnel decisions in particular. See *Coleman v. Darden*, 595 F.2d 533, 539 (10th Cir. 1979); *Grotta v. United States*, 415 F.2d 1271, 1276 (8th Cir. 1969) (Blackmun, J.); *Kletschka v. Driver, supra*.

In this case, the little that can be gleaned from the statute itself and the legislative history weigh against concluding that Congress intended courts to exercise more than a very circumscribed scope of review. In broad terms Congress directed the Postal Service, as an employer, "to establish procedures . . . to assure its officers and employees meaningful opportunities for promotion and career development," 39 U.S.C. § 1001(b), and "provide . . . career opportunities that will assure the attraction and retention of qualified and capable supervisory and other managerial personnel." *Id.,* § 1004(a); see also *id.,* § 101(c). Defendant has not disputed plaintiff's contentions that its hiring and advancement policies were based on merit to fulfill these obligations, or that plaintiff counted on receiving their benefit when he came to work for defendant. But recognizing that defendant has put into place merit hiring and advancement policies in order to fulfill statutory obligations does not determine in plaintiff's favor the question of Congress' intent on the issue of reviewability.

On the contrary, the true significance of the existence of merit hiring and advancement policies is made clear by considering what they were intended to replace. In the same Chapter 10 of the Postal Reorganization Act which outlines the Postal Service's obligations as an employer, Congress clearly indicated its belief that the Postal Service could best fulfill its fundamental purpose of delivering mail efficiently, if the Service could decide for itself who to appoint and hire, according to its own definitions and standards, without outside political interference. See 39 U.S.C. § 1002(a). And the House of Representatives report accompanying the bill amply supports this view that Congress' prime concern was to free the nation's mail delivery system from the debilitating effects of political patronage. See H.R.No.91–1104, 91st Cong., 2d Sess. (1970), *reprinted in* [1970] U.S.Code Cong. & Admin.News 3649, 3653, 3660–61. Thus, Congress specifically declared that "the Postal Service shall appoint all [of its] officers and employees." 39 U.S.C. § 1001(a).

In sum, the legislative materials indicate at most a Congressional purpose to ensure that a personnel policy cleansed of political favoritism would be followed in the hiring and promotion of Postal Service employees within the "postal career service," 39 U.S.C. § 1001(b), presumably like that followed in the career civil service of which the Postal Service was declared to be a part. *Id.* And it bears noting that the legislative materials indicate that Congress did not specifically address the question of reviewability of the merits of personnel decisions. Certainly, the failure is not surprising in view of the traditional reluctance of courts to interfere in the merits of governmental employment matters. See *Kletschka v. Driver, supra.*

■ Accordingly, the court concludes that the scope of review available over Postal Service personnel decisions is limited to determining whether those decisions were reached by utilizing procedures reasonably calculated "to assure its officers and employees meaningful opportunities for promotion and career development." 39 U.S.C. § 1001(b). Because it is undisputed that defendant did utilize a merit selection process, and that this process revealed traits in plaintiff's personality which detracted from his "competitiveness" for appointment as a Postal Inspector, in the opinion of the persons best able, and specifically responsible for making such determinations, it is clear that plaintiff's claim may not be entertained.

The decision in *NAPS v. USPS, supra,* supports this conclusion that Congress intended courts to exercise only this limited type of review. In that case, several organizations of postal supervisors challenged decisions the Postal Service had made on how much to pay supervisory and non-supervisory personnel. In the district court the supervisors had successfully argued that the amount they received violated the Postal Service's obligation under 39 U.S.C. § 1004(a) to maintain "adequate and reasonable differentials" in rates of pay between the two general classes of employees. The Court of Appeals reversed.

After reviewing the legislative history of the Postal Service Reorganization Act, the court concluded that Congress had intended to vest the Postal Service with broad, but not unlimited discretion in setting the compensation amounts. Judicial oversight in some degree was mandated because Congress itself had directed the Postal Service to provide a differential that was also "adequate and reasonable." Far more than in the present case, there were manageable standards against which the Postal Service's determination could be measured. Nevertheless, the court held that while the Postal Service could be compelled to consider and fulfill the differential requirement, a court could not substitute its own judgment of what was adequate and reasonable for that of the Postal Service. 602 F.2d at 435. Judicial inquiry was declared to be "at an end," *id.*, when it was clear that the Postal Service had considered the various factors set forth in the Postal Act, and arrived at a good faith judgment based upon them.

Thus, in the present case, it is sufficient for decision that the record supports defendant's assertion that because of certain personality traits revealed in plaintiff's file, plaintiff was considered less qualified to be a Postal Inspector than others, even those who received a lower qualification rating score. As former Chief Judge Lumbard wrote in declining to review a Veterans Administration decision transferring a plaintiff to another hospital, purportedly because of strained relations between plaintiff and hospital staff:

"Obviously, we cannot review the wisdom or good faith of the transfer without subjecting all such personnel decisions to a similar review. Such a course would encourage a vast quantity of litigation and deprive the V.A. administrator of an element of flexibility which is necessary if he is to operate his department efficiently. Where the challenged personnel decision falls short of discharge we believe that, in general, the courts should seek to discourage arbitrary agency action by enforcing the various procedural rights of affected employees, and not be

undertaking a full substantive review of the justification for the decision .... The general refusal of courts to review the merits of personnel decisions finds additional support in the difficulty of verifying or refuting the wisdom of judgments based on partly intuitive assessments of personal competence and the ability of one man to work in harmony with others."

*Kletschka v. Driver, supra,* 411 F.2d at 443.

Accordingly, defendant's motion for summary judgment dismissing the complaint is granted.

SO ORDERED.