Edwin P. STRITZL, Plaintiff-Appellant,

v.

UNITED STATES POSTAL SERVICE et al., Defendants-Appellees.

No. 77–1200.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 23, 1979.

Decided July 13, 1979.

&#x26AD;5

James C. Bull and Alan H. Bucholtz, of Quiat, Bucholtz & Bull, P. C., Denver, Colo., for plaintiff-appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Cathlin Donnell, U. S. Atty., Denver, Colo., William Kanter and Alice L. Mattice, Dept. of Justice, Washington, D. C., for defendants-appellees.

Before SETH, Chief Judge, and McWILLIAMS and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an action challenging the procedures by which the plaintiff, Edwin Stritzl, a probationary employee with the United States Postal Service, was discharged from his position as postal clerk. Stritzl contends that his discharge without a hearing violated the Postal Service Reorganization Act, 39 U.S.C. § 101, *et seq.*, which requires, *inter alia*, that "employees" be afforded "an opportunity for a fair hearing on adverse actions." 39 U.S.C. § 1001(b). Stritzl alternatively contends that his discharge without a hearing violated the due process clause of the Fifth Amendment. Stritzl sought reinstatement, back pay, and an order that he be afforded a hearing.

The case was tried on stipulated facts. The trial court rejected both the statutory and constitutional claims urged by Stritzl and dismissed the action. Stritzl appeals.

On December 14, 1974, Stritzl was hired by the United States Post Office at Golden, Colorado, as a postal clerk. As a condition of his employment, Stritzl was required to serve a 90-day probationary period, as provided by the National Agreement negotiated between the Postal Service and various postal unions.

In his first evaluation at the Golden Post Office, dated February 6, 1975, Stritzl received an unsatisfactory mark in the area of productivity and work habits. He was counseled by his supervisor, but failed to improve. Accordingly, on March 6, 1975, Stritzl received notice that he had received an unsatisfactory rating and that his supervisor had recommended that he be fired. On March 11, 1975, he was officially terminated. The reason given for the discharge was that Stritzl was "unable to meet the work requirements of this office."

In the interim, Stritzl had applied on March 7, 1975 to the Post Office in Littleton, Colorado for a job as postal clerk. The Littleton Postmaster requested Stritzl's official personnel folder from the Golden Post Office, as well as response to a questionnaire relating to Stritzl's general qualifications. These were both supplied. The gist

of the Golden Post Office's evaluation was that Stritzl was a slow worker with "poor work habits and low productivity."

On March 18, 1975, the Littleton Post Office rejected Stritzl's application for employment and it is agreed that such rejection was based to a large degree on the negative evaluation given by the Golden Post Office.

Stritzl was a member of the American Postal Workers Union, and he initially attempted to appeal his discharge through the grievance procedures provided in the collective bargaining agreement between the Union and the Postal Service. The appeal was processed through the first three steps of grievance procedure, but the discharge was affirmed at each level on the ground that Stritzl had no appeal rights as a probationary employee. The Union thereafter declined to process the appeal further.

Stritzl later attempted to appeal his termination to the Civil Service Commission. The Commission, however, dismissed the appeal on the ground that he had not served continuously in his position for one year, as required by Civil Service regulations.

Stritzl then brought the present action in the United States District Court for the District of Colorado, alleging that his discharge without a hearing was in violation of the "fair hearing" provision of 39 U.S.C. § 1001(b) and, alternatively, was unconstitutional under the due process clause. In a comprehensive opinion, the trial court rejected both claims. We agree.

Historically, Government service has generally provided for an initial probationary period during which the employee's rights are more limited than those of a post-probationary employee. *Blondo v. Bailar,* 548 F.2d 301, 305 (10th Cir. 1977). A probationary employee's services could be terminated because of unsatisfactory performance without hearing and without appeal. This historical fact was recognized in the collective bargaining agreement in effect at the time of Stritzl's discharge. That agreement provided that the Postal Service had the right to separate from its employ any probationary employee at any time during during the probationary period and that a probationary employee thus separated had no access to grievance proceedings in relation to such separation. As indicated, in the instant case Stritzl's grievance was rejected on the ground that under the terms of the bargaining agreement Stritzl had no appeal rights as a probationary employee.

It is Stritzl's initial position that all this was changed by virtue of one sentence in the Postal Reorganization Act of 1970. 39 U.S.C. § 1001(b) provides, *inter alia,* that: "The Postal Service shall establish procedures, in accordance with this title, . . . to assure its officers and employees full protection of their employment rights by guaranteeing them an opportunity for a fair hearing on adverse actions, with representatives of their own choosing." The trial court rejected "out of hand" the suggestion that this one sentence from the Postal Reorganization Act somehow conferred upon Stritzl the right to a hearing before his probationary employment with the Postal Service was terminated. We also reject this argument.

The provision providing for a "fair hearing on adverse actions" relates to "employment rights." In other words, the language here relied on proposes to protect "employment rights" by insuring a "fair hearing" before "adverse action" is taken relative thereto. We do not regard this statutory language as creating new substantive "employment rights." Specifically, we do not regard the statutory language here relied on as creating a right whereby probationary employees are entitled to receive a hearing before their probationary employment is terminated. If Congress had intended to create such an employment right for probationary employees, it would have said so in clear and understandable language. Congress did not do so, however. In short, the statutory language here relied on does not grant a probationary employee in the Postal

Service the right to a hearing before his probationary services are terminated.

■ *Winston v. United States Postal Service*, 585 F.2d 198 (7th Cir. 1978) has present pertinency, though the facts of that case are admittedly different from those in the present one. *Winston* contains a detailed statement on the legislative history of the Postal Reorganization Act. The author of that opinion is Judge Jack R. Miller of the United States Court of Customs and Patent Appeals sitting by designation in the Seventh Circuit. Judge Miller was himself a member of the Congress which enacted the Postal Reorganization Act. In *Winston* Judge Miller reviewed in depth the legislative history of the Act and concluded that the "fair hearing" requirement of 39 U.S.C. § 1001(b) was qualified by, and subordinate to, any grievance procedures negotiated by the Postal Service and the Union through collective bargaining. The discharged employees in *Winston* were not probationary employees, and were afforded a hearing under the collective bargaining agreement. However, they were not allowed to confront and cross-examine hostile witnesses nor were they allowed to present evidence of their own to rebut the charges against them. The procedures followed in *Winston* were in accord with the collective bargaining agreement, but, according to the discharged employees, violated the "fair hearing" requirement of 39 U.S.C. § 1001(b). As indicated, the Seventh Circuit rejected this argument and held that the grievance procedures contained in the bargaining agreement governed, and that such procedures did not violate either the "fair hearing" requirement of 39 U.S.C. § 1001(b) or the due process clause of the Fifth Amendment. We believe *Winston* is authority for holding that the fair hearing requirement of 39 U.S.C. § 1001(b) is subject to and limited by the provisions of the Postal Reorganization Act permitting collective bargaining agreements containing grievance procedures.

■ Alternatively, Stritzl argues that the publication of derogatory information concerning his termination of employment deprived him of a "liberty interest" and required a hearing under the Fifth Amendment. In thus arguing Stritzl relies upon the fact that his application for employment with the Littleton Post Office was rejected because of the evaluation made by the Golden Post Office. As previously indicated, the Golden Post Office had characterized Stritzl as a slow worker with "poor work habits and low productivity."

In his constitutional argument Stritzl relies upon such cases as *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). The instant case is a far cry from *Constantineau*. There a statute of the State of Wisconsin empowered certain designated officials to forbid the sale of intoxicating liquors to excessive drinkers by posting notice in retail liquor outlets, and that such posting could be without notice or hearing. In *Constantineau* the Supreme Court upheld a determination by a three-judge district court that the statute violated procedural due process. In thus holding, the Supreme Court concluded that where the state attached a "badge of infamy" to one of its citizens, due process comes into play.

We do not regard the characterization of Stritzl by the Golden Post Office as one possessed of "poor work habits and low productivity" as the equivalent to the "badge of infamy" referred to an *Constantineau*. Nor does the characterization amount to a type of "stigma" recognized in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct 2701, 33 L.Ed.2d 548 (1972) as requiring a hearing. In *Weathers v. West Yuma County School District R–J–I*, 530 F.2d 1335 (10th Cir. 1976), a school teacher's employment contract was not renewed because of "overall performance." The teacher later brought an action based, in part, on a "liberty interest" which he claimed he had been deprived of without due process of law. The trial court rejected that claim, and, on appeal, we affirmed with the following comment:

> The instant case may well be one where the fact of nonrenewal and the

reasons therefor, if communicated, would make the appellant "less attractive" to future employers. That is simply not enough to establish a liberty interest. We agree with the trial court that nothing present in this case indicates appellant has had such a stigma imposed upon him as to foreclose future employment opportunities.

*Jenkins v. United States Post Office,* 475 F.2d 1256 (9th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973) is quite comparable to the present case. In *Jenkins* a probationary Postal Service employee was separated during the course of her probationary period because of her "failure to meet minimum standard requirements." She was not afforded a pre-dismissal hearing. In *Jenkins,* unlike the present case, the probationary employee conceded that she was not entitled to a pre-dismissal hearing by any statute or regulation. However, as here, the employee in *Jenkins* did contend that her termination without a hearing constituted a deprivation of liberty without due process of law. In rejecting that argument, the Ninth Circuit commented as follows:

> Plaintiff suggests that the Constitution requires a hearing to protect an individual's liberty any time a government employee is discharged under circumstances which reflect unfavorably upon his character. This proposition is overly broad. "[A]ny reason [assigned for the dismissal] other than reduction in force is likely to be to some extent a reflection on a probationer's ability, temperament, or character." *Medoff v. Freeman,* 362 F.2d 472, 476 (1st Cir. 1966). Nonetheless, not every dismissal attains constitutional proportions. "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). However, a posting procedure similar to that which concerned the Court in *Constantineau* is

not at issue here. Plaintiff's reliance on *Constantineau* is inappropriate.

Judgment affirmed.