Leslie A. **HARRISON**,
Plaintiff–Appellant,

v.

**UNITED STATES POSTAL SERVICE;**
Thomas S. Straub, Postmaster; Frederick T. Hines, Acting Director of Mail Processing; E.B. Fuller; Joseph J. Digiacomo, General Manager, Defendants–Appellees.

No. 87–1089.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1987.

Decided Feb. 25, 1988.

Ruben I. Hamby, Savage, Md., for plaintiff-appellant.

Martin Himeles, Jr., Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on brief), for defendants-appellees.

Before HALL and MURNAGHAN, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, Senior District Judge:

This appeal arises out of the claim of plaintiff-appellant Leslie A. Harrison (Harrison) that defendant-appellees denied him access to the United States mails in violation of his due process rights under the

Fifth Amendment. The district court dismissed appellant's complaint for failure to state a claim. We conclude that appellant received all the process due him, and accordingly affirm the judgment below.

I.

On February 10, 1986, Harrison filed a *pro se* complaint against the United States Postal Service (Postal Service) and several Postal Service officials [1] in the United States District Court for the District of Maryland. Defendants moved to dismiss the complaint for failure to state a claim. After a hearing on defendants' motion, the district court allowed Harrison to file an amended complaint. After Harrison filed his amended complaint on October 3, 1986, defendants again moved to dismiss the complaint, and this time the district court granted their motion. It is from the dismissal of the amended complaint that Harrison appeals.[2]

According to the amended complaint and exhibits attached thereto,[3] Harrison was employed until October 1985 as a driver by Ms. Gladys Blackburn, a private highway contractor for the Postal Service. On six separate occasions between September 1984 and September 1985, the Postal Police filed Security Incident Reports (incident reports) which charged Harrison with violating various Postal Service regulations. Harrison's alleged misconduct included spitting at a postal police officer, failing to comply with the instructions of a postal police officer, using abusive language in speaking to a postal police officer, and wilfully attempting to delay the movement of the mails by parking his truck illegally. On a seventh occasion, Harrison was "counseled" on "logistics on exiting and entering [and] also [on] good housekeep-

1. The individual defendants were Thomas S. Straub, Baltimore Postmaster, Frederick T. Hines, Acting Director of Mail Processing, E.B. Fuller, of the Transportation Management Office, and Joseph J. DiGiacomo, General Manager.

2. While Harrison proceeded *pro se* in the district court, he was represented by counsel on this appeal.

3. In part, the recitation of the facts alleged by Harrison in his original complaint, which are

ing."[4] In the last of the incident reports, dated September 18, 1985, the reporting office, after reviewing Harrison's record, described Harrison as "disruptive, uncooperative and counterproductive in his actions," and urged that "corrective action" be taken.

On September 26, 1985, Thomas S. Straub, Baltimore Postmaster, notified Harrison's employer, Ms. Blackburn, that as a result of Harrison's "blatant disregard for Postal personnel and regulations" Harrison was "decertified" and would henceforth be denied access to the United States mails.

Ms. Blackburn requested a hearing on the matter, and such a hearing was held on October 22, 1985. In attendance at the hearing were Ms. Blackburn, Mr. Owen Harrison (Ms. Blackburn's spokesperson),[5] Harrison himself, Frederick Hines (the acting chief of mail processing), and Marvin T. Russell (Logistics Coordinator).

On behalf of Harrison, Owen Harrison protested the denial of access on three grounds: (1) that Harrison was "being picked on and was a victim of circumstances"; (2) that the incident reports were not entirely accurate; and (3) that, as the contractor, Ms. Blackburn did not receive copies of some of the incident reports prior to the decision to deny Harrison access to the mails.

Frederick Hines, the Postal Service official presiding at the hearing, rejected Owen Harrison's contentions, affirmed Harrison's decertification, and summarized the reasons for his decision as follows:

> I informed Mr. Harrison that these Incident Reports were compiled by several different Security Officers and that some of the incidents were repeated. Secondly, it was stated that some of Mr. Harrison's infractions were done in the presence of witnesses in retaliation for previous tickets given him. I stood firm on my belief that a person with Mr. Leslie A. Harrison['s] behavior has no business with a responsibility as important as handling U.S. Mail. Thirdly, it was stated that a copy of all Incident Reports that pertains to a driver or the contract schedule is sent to the Contract Owner. Plus in this case, in each of the last three Warning Letters, copies of the recent Incidents were included.

On October 23, 1985, pursuant to a request for information which Ms. Blackburn made at the hearing, Hines informed her that there were no additional avenues of appeal within the Postal Service itself. Nevertheless, Harrison filed written appeals in turn with the Regional General Manager of the Logistics Division, the General Counsel of the Postal Service, and the Transportation Service Office. All three affirmed Harrison's decertification.

The gravamen of Harrison's complaint and appeal is that by denying him access to the United States mails without a full-blown pretermination evidentiary hearing, the Postal Service violated Harrison's rights to procedural due process under the Fifth Amendment. At the hearing on defendants' motion to dismiss the amended complaint held on March 13, 1987, the district court went to great lengths to explain the relevant constitutional principles to Harrison. Shortly thereafter, in an opinion dated March 16, 1987, the district court dismissed the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). Relying upon certain contractual and statutory provisions which gave the Postal Service discretion to decertify contractor employees, the district court concluded that Harrison had no property interest in continued access to the mails and that, therefore, Harrison was not entitled to the procedural due process protections of the Fifth Amendment. The district court also decided that the complaint failed to state a claim under the Administrative Procedure Act, 5 U.S.C. §§ 551–59,

---

not as thoroughly set forth in the amended complaint, is incorporated.

**4.** It is not clear from the record whether an incident report was filed after the "counseling" occurred.

**5.** Owen Harrison was both the plaintiff's father and Ms. Blackburn's director of operations.

701–06 (1982 & Supp. III 1985), because the Postal Service officials had discretion to decertify Harrison for any reasons which were not arbitrary and capricious.

## II.

Subject matter jurisdiction over Harrison's claim against the Postal Service for violation of his Fifth Amendment right to procedural due process exists pursuant to the doctrine of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 2d 619 (1971). *See Davis v. Passman*, 442 U.S. 228, 248, 99 S.Ct. 2264, 2278, 60 L.Ed. 2d 846 (1979); *Gaj v. United States Postal Service*, 800 F.2d 64, 67–68 (3d Cir.1986).[6] In evaluating a civil rights complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6),[7] we must be "especially solicitous" of the wrongs alleged. We must not dismiss the complaint "unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Canty v. City of Richmond, Va. Police Dep't*, 383 F.Supp. 1396, 1399 (E.D.Va.1974), *aff'd mem. sub nom. Canty v. Brown*, 526 F.2d 587 (4th Cir. 1975), *cert. denied*, 423 U.S. 1062, 96 S.Ct.

802, 46 L.Ed.2d 654 (1976). We must be even more receptive to such cases where, as here, the plaintiff proceeded *pro se* in the court below. *Id.* at 1399–1400.

In analyzing a due process claim, the first question is whether Harrison had a liberty or property interest in continued access to the United States mails. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The court below concluded that Harrison had no such interest and therefore was not entitled to any due process. We find it unnecessary to reach that question, however, because it is apparent from the face of the complaint that, even assuming Harrison had such a protected interest, he received all the process to which he was entitled.

## A.

Harrison first contends that he was entitled by statute to a full-blown pretermination evidentiary hearing.[8] Harrison bases this contention principally on subsection 19–125.7 of the Postal Contracting Manual, incorporated as law in 39 C.F.R. § 601.100 (1987). Subsection 19–125.7 reads, in pertinent part, as follows:

---

**6.** The Postal Service has no sovereign immunity. *See* 39 U.S.C. §§ 401(1), 409(a) (1982).

**7.** In its memorandum opinion, the district court referred to various exhibits which defendants submitted as part of their motion to dismiss. On appeal, Harrison argues that such references improperly converted the motion to dismiss into a motion for summary judgment. Since discovery was stayed pending the court's ruling on the motion to dismiss, Harrison argues that the district court's reliance on those extraneous exhibits constituted reversible error. *See, e.g., Gay v. Wall*, 761 F.2d 175, 177–78 (4th Cir.1985).

It is true that a motion to dismiss should not be converted into one for summary judgment without notice to the parties and without affording to the party against whom summary judgment is sought time for appropriate discovery. However, even though the district court cited to exhibits submitted by the defendants, the facts to which the court so referred were either alleged in the amended complaint or contained in the exhibits thereto. Harrison has therefore in no way been prejudiced because the district court referred to alternative sources for the allegations. Moreover, as our analysis *infra* makes

clear, remanding this case for further discovery could not in any event create a claim where none exists. The district court's treatment of the motion, even if technically erroneous, does not warrant reversal. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981); *see also SEC v. Seaboard Corp.*, 677 F.2d 1315, 1317 (9th Cir.1982).

**8.** Harrison was not a Postal Service employee. Nor was he an employee of the federal government. *See* 5 U.S.C. § 7511(a)(1) (1982) (defining "employee" for purposes of removal from position). Accordingly, he was not entitled to the procedural protections of the Civil Service Reform Act of 1978. Even if he is deemed a Postal Service employee, which he seemingly is not, Harrison was not entitled to a full-blown pretermination evidentiary hearing unless the same is provided for in a collective bargaining agreement. *See Winston v. United States Postal Service*, 585 F.2d 198 (7th Cir.1978) (construing 39 U.S.C. § 1001(b)); *see also Stritzl v. United States Postal Service*, 602 F.2d 249, 251–52 (10th Cir.1979) (same). The record herein does not support a finding that Harrison was covered by such an agreement.

**Denial of Access.** The decision to deny access to the mail contractor, subcontractors or their employees, shall be governed by the following:

(a) A contractor, subcontractor or any employee thereof, may be denied access to the mail on evidence of conviction of a felony, known association with felons, intentional submission of false data or concealment of data intended to induce employment, and a driver may be precluded from operating a vehicle transporting mail on evidence of serious moving traffic violations, unless the Regional General Manager, Logistics Division, has determined that such person has since been rehabilitated and has become a responsible citizen.

(b) The decision as to whether a contractor, subcontractor or contract employee shall be denied access to the mail or precluded from operating a vehicle transporting mail shall be made by the Regional General Manager, Logistics Division, in accordance with the provisions of this paragraph and the ineligibility provisions of paragraph 19–124. Such decision shall be taken only after consideration of the recommendations and comments of the Regional Counsel; the Inspection Service; Administrative Officials; and information from any other source, such as parole officials or former employers.

From this passage Harrison would have us conclude that the only reasons for which the Postal Service can decertify a contract driver are those listed in subsection 19–125.7(a), and that such decertification cannot occur without a pretermination hearing.

Harrison's contention is entirely unpersuasive. In the first place, we find it difficult to believe that the Postal Service could not refuse to certify, or once having certified, decertify a person, for the type of behavior involved herein. In addition, subsection 19–125.7(a) is but one part of section 19–125 which outlines the screening procedures the Postal Service must follow when deciding whether or not initially to hire a given contractor.[9] Subsection 19–125.7 simply requires the contracting officer during his initial screening of the contractor or its employees to take into account whether a prospective employee of that contractor has engaged in certain types of conduct. The Postal Contracting Manual fails to instruct the Postal Service on what procedures must be followed when a contractor's employee like Harrison who, although approved during the initial screening procedure, subsequently defies Postal Service authority.

Harrison's situation appears to be governed by the Basic Surface Transportation Services Contract Provisions (Basic Provisions), which are incorporated into all Postal Service contracts with contractors such as Ms. Blackburn. Section 5(b)(2)(a) of the Basic Provisions requires contract drivers to "obey all laws, ordinances, and regulations of the jurisdiction in which the motor vehicles are being operated." Furthermore, pursuant to provision 4(g), a contractor like Ms. Blackburn must "deny access to the mail to any employee" when the "Contracting Officer," a Postal Service official, requires her to do so.

The Basic Provisions appear to have given the contracting officer discretion to deny Harrison access to the mails. However, those provisions, like the Postal Contracting Manual, are silent on what procedures, if any, the contracting officer must follow in so doing. In sum, there is no statutory or contractual requirement that Harrison be given a hearing, though in fact one was afforded to him. We turn now to an analysis of whether the post-termination hearing which was held in this case adequately meets the minimum protections of procedural due process as a matter of constitutional law.

### B.

The flexible nature of due process is well known. *See Morrissey v. Brewer*, 408 U.S.

---

**9.** Section 19–125.1 provides in pertinent part: "Each contractor, subcontractor or employee thereof assigned directly to the handling or transportation of mail shall be screened to determine his suitability for access to mail matter or postal operational areas, except the following who are exempted...." The remaining subsections provide the details of how such screening is to be accomplished.

471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Our inquiry focuses on whether the post-termination hearing granted to Harrison at his employer's request afforded him notice and a meaningful opportunity to be heard in opposition to his decertification. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982). We conclude that it did.

In determining what process was due Harrison, we must examine three separate factors:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).[10]

With respect to the first *Mathews* factor, the private interest in the case at bar, although certainly important, is not of itself sufficient to require a pretermination hearing. Harrison was not deprived *altogether* of his livelihood as a truck driver, but simply prevented from driving a truck which carries the United States mail. *See Cafeteria and Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895–96, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961); *see also Mathews*, 424 U.S. at 341, 96 S.Ct. at 905 (comparing private interest of discharged federal employee with that of a totally disabled person whose disability benefits were terminated and who has less chance of obtaining employment than a discharged employee with the ability to do some work). *Cf. Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.

2d 287 (1970) (in which "the very means by which to live" were involved).

Second, the risk of an erroneous deprivation as a result of the procedures used is quite small. The Postal Service notified both Harrison and his employer of his misconduct. On two occasions, for example, Harrison was issued mandatory court appearance tickets in connection with the particular incident report filed. He was also counseled by his superior about his behavior. The Postal Service provided Ms. Blackburn with copies of the incident reports, and also sent her "Warning Letters" about Harrison. Furthermore, Harrison, Ms. Blackburn, and Harrison's father, Owen, appeared at the hearing, during which Owen Harrison presented Harrison's version of the events precipitating his dismissal. Finally, Harrison appealed the decision to three different levels of the Postal Service, all of which affirmed the decision. Given the circumstances, those procedures were entirely adequate. *See Rosewitz v. Latting*, 689 F.2d 175, 177 (10th Cir.1982); *see also Boston v. Webb*, 783 F.2d 1163, 1166–67 (4th Cir.1986). Nor is there any indication that the use of additional procedural safeguards would have altered in any way the decision to deny Harrison access. *Compare Logan*, 455 U.S. at 434–35, 102 S.Ct. at 1156–57.

Finally, we must consider the Government's obvious interest in insuring the efficient processing of the mails, and the burden on that interest which would occur were additional procedural safeguards required whenever a contract employee's decertification occurred. We conclude that those concerns weigh heavily against the imposition of such additional safeguards. As Justice Powell has noted in a similar context:

> [T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the preroga-

---

10. *Mathews* itself dealt with the issue of whether a pretermination hearing was required. However, the three *Mathews* factors have been applied in both pre- and post-termination settings. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 675–83, 97 S.Ct. 1401, 1414–19, 51 L.Ed.2d 711 (1977); *McClelland v. Massinga*, 786 F.2d 1205, 1210–16 (4th Cir.1986); *Tomai–Minogue v. State Farm Ins. Co.*, 770 F.2d 1228, 1232–36 (4th Cir.1985); *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1113–14 (D.C.Cir.1985).

tive to remove employees whose conduct hinders efficient operation and to do so with dispatch.... Moreover, a requirement of a prior evidentiary hearing would impose additional administrative costs, create delay, and deter warranted discharges. Thus, the Government's interest in being able to act expeditiously to remove an unsatisfactory employee is substantial.

*Arnett v. Kennedy*, 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1972) (footnote omitted) (Powell, J., concurring in part and concurring in the result in part). *See also Cafeteria*, 367 U.S. at 896, 81 S.Ct. at 1749; 39 U.S.C. § 1001(e).[11] By virtue of section 4(g) of the Basic Provisions, the Government's "prerogative to remove employees whose conduct hinders efficient operation" extends to Harrison even though he himself is not a government employee.[12]

Because we find that Harrison received all the process which he was due, we conclude that the Postal Service did not violate Harrison's rights under the Fifth Amendment.

### III.

The district court also concluded that Harrison could not successfully pursue his suit by relying on the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–59, 701–06 (1982 & Supp. III 1985). Harrison relies upon the judicial review provisions of the APA.[13] However, by virtue of 39 U.S.C. § 410(a), those provisions do not apply to the Postal Service.[14] *See Spinks v. United States Postal Service*, 621 F.2d 987, 989 (9th Cir.1980) (apparently because 39 U.S.C. § 410(a) makes the APA inapplicable, district court held precluded from reviewing for abuse of discretion an employment-related action taken by the Postal Service); *Caldwell v. Bolger*, 520 F.Supp. 626, 628 (E.D.N.C.1981) (same).

However, notwithstanding the inapplicability of the APA to actions taken by the Postal Service, under certain circumstances some courts have reviewed certain Postal Service actions, including employment-related actions, by relying on an implied non-

---

**11.** 39 U.S.C. § 1001(e) provides in relevant part:
    (e) The Postal Service shall have the right
...
    (1) to direct officers and employees of the Postal Service in the performance of official duties;
    (2) to hire, promote, transfer, assign, and retain officers and employees in positions within the Postal Service, and to suspend, demote, discharge, or take other disciplinary action against such officers and employees;
    (3) to relieve officers and employees from duties because of lack of work or for other legitimate reasons;
    (4) to maintain the efficiency of the operations entrusted to it; [and]
    (5) to determine the methods, means, and personnel by which such operations are to be conducted....

**12.** As previously noted, section 4(g) of the Basic Provisions provides: "The Contractor shall deny access to the mail to any employee when required by the Contracting Officer."

**13.** Specifically, Harrison calls our attention to 5 U.S.C. § 706(2), which provides:
    The reviewing court shall—

    .    .    .    .    .

    (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;
    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
    (D) without observance of procedure required by law;
    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

**14.** Section 410(a) provides:
    Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, *including the provisions of chapters 5 and 7 of title 5*, shall apply to the exercise of the powers of the Postal Service.
    (emphasis added). None of the references to other statutes appears to be relevant herein. Also, 5 U.S.C. § 706, relied upon by Harrison, is part of chapter 7 of title 5. *See Peoples Gas, Light & Coke Co. v. U.S. Postal Service*, 658 F.2d 1182, 1199 (7th Cir.1981).

statutory right of judicial review. *See, e.g., Peoples Gas, Light & Coke Co. v. United States Postal Service,* 658 F.2d 1182, 1188–92 & n. 5 (7th Cir.1981); *Nat'l Ass'n of Postal Supervisors v. United States Postal Service,* 602 F.2d 420, 423, 429–33 (D.C. Cir.1979); *Lutz v. United States Postal Service,* 538 F.Supp. 1129, 1133–34 (E.D.N. Y.1982); *Withers v. United States Postal Service,* 417 F.Supp. 1, 3 (W.D.Mo.1976); *Burns v. United States Postal Service,* 380 F.Supp. 623, 626–27 (S.D.N.Y.1974). While the issue of whether such a nonstatutory right of judicial review should apply in the case before us has not been raised at any point in these proceedings, we conclude that even if we can so review the issue, Harrison has not shown any abuse of discretion by the Postal Service.

Accordingly, even if we conduct an implied nonstatutory review similar to that provided by 5 U.S.C. § 706, we conclude that there is no reason to overturn the decision challenged in this appeal. The Postal Service acted appropriately in the exercise of its discretionary authority to decertify Harrison. While Harrison cites several instances in which he claims the Postal Service failed to follow its own procedures in denying him access to the mails, none of those deviations constitutes the type of prejudicial error which requires or even permits reversal by this court.[15] *See Withers v. United States Postal Service,* 417 F.Supp. 1, 6 (W.D.Mo.1976) (dealing with nonstatutory judicial review); *see also, e.g., Buschmann v. Schweiker,* 676 F.2d 352, 358 (9th Cir.1982) (applying analogous standard in connection with judicial review under the APA). Accordingly, Harrison cannot prevail in this appeal pursuant

to review analogous to that available under the APA.

AFFIRMED.

---

**15.** Specifically, Harrison contends that initially the Baltimore Postmaster rather than the contracting officer, Mr. DiGiacomo, denied him access to the mails. Even though that is technically correct, Mr. DiGiacomo later affirmed in writing the denial of access. We cannot see how Harrison has been in any way prejudiced by those occurrences.

Harrison also argues that some of the rules and regulations which he was accused of violating were not posted as required by 40 U.S.C. § 318a (1982). Even so, after his initial viola-

tions of those regulations, Harrison knew what conduct was improper. It is significant that at his post-termination hearing Harrison did not claim ignorance of those regulations as his reason for committing the infractions. *Cf. United States v. Strakoff,* 719 F.2d 1307, 1310 (5th Cir. 1983) (absence of posted notice would be cured if defendant had actual notice of proscribed conduct). We therefore conclude that no prejudicial error occurred even if the regulations were not posted.