Nicolaas E. KONIJNENDIJK, Plaintiff,

v.

Charles DEYOE, an individual; Walter R. Woods, an individual; Frank J. Becker, an individual; Norman W. Brandeberry, an individual; Patricia W. Caruthers, an individual; Richard W. Dodderidge, an individual; Sandra L. McMullen, an individual; Richard Reinhardt, an individual; William R. Roy, an individual; and Donald C. Slawson, an individual, Defendants.

No. 86–4316–R.

United States District Court, D. Kansas.

Dec. 11, 1989.

Wesley A. Weathers, Weathers & Riley, Topeka, Kan., for plaintiff.

Richard H. Seaton, Kansas State University, Manhattan, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action brought by the plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff contends that his First Amendment free speech rights and his Fourteenth Amendment due process rights were violated by defendants when he was terminated from his position of associate director of the International Grains Program (IGP) at Kansas State University (KSU). Plaintiff seeks compensatory and punitive damages

**1394**

as well as reinstatement. The defendants are Charles Deyoe, director of the IGP; Walter R. Woods, dean of the college of agriculture at KSU; and the eight members of the Kansas Board of Regents. This matter is presently before the court upon the motion of the members of the Kansas Board of Regents for summary judgment and the motion of all defendants for summary judgment. Having carefully reviewed the materials before the court, we are now prepared to rule.

In his complaint, plaintiff alleges that he was employed as the associate director of IGP on or about March 18, 1984 and continued to serve in that capacity until June 19, 1986. He further alleges that he was a permanent unclassified employee of KSU while serving as associate director of the IGP. He contends that he was terminated from his position because (1) he made certain public statements while carrying out the responsibilities of his job concerning the wheat standards of the United States, and (2) he became involved in a dispute with certain KSU faculty members regarding their contract obligations to the IGP. Plaintiff asserts that he was terminated without a hearing and, thus, his property and liberty interests under the due process clause of the Fourteenth Amendment were violated by the defendants. He further asserts that he was terminated in retaliation for his public statements and, thus, his rights to free speech under the First Amendment were violated by the defendants.

Many of the facts providing the background in this case are not in dispute. We shall review these facts prior to considering the arguments of the parties. The IGP was established at KSU in 1978 by the Kansas state legislature. Its purpose is to promote the worldwide marketing of the wheat, corn, soybeans and sorghum of the United States. The IGP provides courses, workshops and seminars on various phases of grain processing, handling, utilization and marketing. The programs are open to interested foreign and domestic grain buyers, processors and government officials.

Defendant Deyoe is head of grain science and industry at KSU and the director of the IGP. Plaintiff was employed as the associate director of IGP on March 18, 1984. As associate director, plaintiff was directly supervised by Deyoe. The majority of the responsibilities of the associate director of the IGP are outlined in the job description as follows:

(1) Advise and counsel the Director regarding the IGP programs. Coordinate activities and interrelationships with the teaching, research and extension faculty in the various departments cooperating with the IGP.

(2) Maintain good working relationships with U.S. marketing agencies (U.S. Wheat Associates, U.S. Feed Grains Council, American Soybean Association, Foreign Agriculture Service, USDA, etc.), Federal Grain Inspection Service and State marketing organizations (Kansas Wheat Commission, Kansas Soybean Association, Kansas Sorghum Commission, Kansas Corn Commission).

(3) Spokesman to producer, legislative, industry and other groups pertaining to IGP subject matter in order to develop broad-based support from the various groups.

(4) Knowledge and background experience is required (10 years desired) in the grain merchandising, handling and utilization areas. Capable of providing expertise in the above disciplines.

(5) Administrative experience to provide cooperation between university administrators, State and National marketing groups and the grain trade.

(6) Review and coordinate, with faculty revision, short course and seminar materials. Develop and work on planning and new programs to meet needs identified by market groups. Develop appropriate materials for new programs.

(7) Assist in identifying and securing resources needed for the IGP program.

(8) Provide expertise here and abroad for the IGP. Will be the contact person

and provide coordination for all requests for courses and services provided under the IGP.

Plaintiff is a citizen of the Netherlands. He came to work for KSU on a J–1 visa as a research scholar. Before plaintiff left the Netherlands for his job at KSU, Deyoe mailed to him, and he signed a written agreement also signed by the Provost of KSU, specifying that his appointment was for twelve months beginning on March 18, 1984. The contract further provided as follows:

This is a regular Administrative/Service appointment which will be renewed annually unless notice to the contrary shall be given in accordance with University regulations on notification of non-reappointment (see attachment).

In May, 1984, plaintiff signed another written agreement pertaining to his appointment which covered the period from June 18, 1984 through June 17, 1985. This agreement again characterized his appointment as a regular administrative/service one. The contract further specified as follows:

This appointment is subject to annual review, renewal, and notice of non-reappointment in accordance with the regulations and policies of the Board of Regents and the University. It does not lead to consideration for tenure.

Plaintiff signed another agreement in May, 1985 for the period from June 18, 1985 through June 17, 1986, which contained the same provisions as the earlier agreements. The policies of KSU provided that a person holding a regular appointment who is not to be reappointed will be notified of non-reappointment for the next fiscal year by December 15.

Sometime prior to the summer of 1984, Deyoe and the Kansas Wheat Commission decided there was a need for a seminar on grain standards. Deyoe asked plaintiff to set up the seminar. The seminar was conducted in the summer of 1984. Following that seminar, defendant asked plaintiff to meet with the press at Ag Media Day on the KSU campus for the purpose of discussing grain standards and quality. At these events, plaintiff made certain statements critical of the United States wheat standards.

On November 19, 1985, at a meeting with the IGP faculty, Deyoe asked for a recommendation concerning the continuation of plaintiff's appointment. Deyoe provided written ballots to the faculty. The vote showed that three wanted plaintiff to be continued, seven wanted plaintiff not to be continued, and three expressed no opinion or deferred to the head of the department. Deyoe then recommended to defendant Woods that plaintiff be notified that his appointment would not be continued beyond June, 1986. On December 9, 1985, plaintiff was notified by Woods that his employment would be terminated as of June 17, 1986.

The court shall first turn to the motion for summary judgment filed by the members of the Board of Regents. These defendants contend that they are entitled to summary judgment because the evidence clearly shows that each of them did not personally participate in the decision to terminate plaintiff, and liability under 42 U.S.C. § 1983 cannot be predicated upon the doctrine of respondeat superior. Plaintiff does not deny that these defendants did not personally participate in the decision to terminate him. However, plaintiff argues that summary judgment should not be granted to these defendants based on two reasons. First, plaintiff contends that rules concerning respondeat superior under § 1983 should not be applied because he is also asserting an action directly under the provisions of the Constitution against these defendants. Second, plaintiff asserts these defendants are proper parties under § 1983 based on his claim for prospective relief of reinstatement.

The court finds no merit to plaintiff's first argument. The law is well-settled that a plaintiff is precluded from pursuing a *Bivens*-type action where alternative avenues of relief are available. *Endsley v. Naes*, 673 F.Supp. 1032, 1035 (D.Kan. 1987); *Jensen v. Board of County Commissioners for Sedgwick County*, 636 F.Supp. 293, 300 (D.Kan.1986); *Lee v.*

*Wyandotte County,* 586 F.Supp. 236, 238 (D.Kan.1984); *Howard v. Topeka–Shawnee County Metropolitan Planning Commission,* 578 F.Supp. 534, 537 (D.Kan.1983). Plaintiff can pursue all of his claims under § 1983.

■ The court, however, does find that plaintiff's second argument has merit and precludes the entry of summary judgment for the individual members of the Board of Regents. These defendants are sued in their official capacities solely for the purpose of prospective injunctive relief. This is proper. *See Will v. Michigan Dept. of State Police,* — U.S. —, — n. 10, 109 S.Ct. 2304, 2311–12 n. 10, 105 L.Ed.2d 45 (1989). Accordingly, defendants' motion for summary judgment shall be denied.

The court shall next consider the motion for summary judgment filed by all defendants. The defendants seek summary judgment on all of the claims asserted by the plaintiff.

*I. First Amendment*

■ The defendants argue that plaintiff's public statements are exempted from First Amendment protection because they were made during the course of his official duties. This argument is now easily resolved. In *Koch v. City of Hutchinson,* 847 F.2d 1436, 1442 (10th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988), the Tenth Circuit specifically rejected the argument that communications made in the course of an employee's official duties are *per se* exempted from First Amendment protection. The Court determined that the fact that an employee's statements were made in the course of his official duties was a significant factor to consider in determining whether his speech addressed matters of public concern. *Id.*

The court is unwilling at this time to determine whether plaintiff's public statements were on a matter of public concern. We do note that the defendants have acknowledged that the plaintiff's statements were matters of public concern. This admission, however, was made prior to the outright rejection of their argument that the plaintiff's statements were exempted from First Amendment protection. We leave the issue of whether the plaintiff's statements were matters of public concern for another day. In addressing this argument in the future, the parties should carefully consider *Koch.*

■ The defendants have also argued that plaintiff's dispute with his fellow employees does not raise a First Amendment question. This argument relates to plaintiff's claim in his complaint that he was terminated in part because of a "dispute with certain KSU faculty members regarding their contract obligations to IGP." Defendants argue that this matter is strictly an internal matter and not one of public concern.

Plaintiff has chosen to characterize this claim differently in his response to the defendants' motion for summary judgment. Plaintiff alleges that he was discharged in part because of "his continuing criticism of IGP expenditures, including his disagreement with the Grain Science faculty over the amount of time that they were willing to spend in order to fulfill their contractual obligations to IGP." Thus, plaintiff now asserts that this claim relates to misutilization of public funds.

The defendants did not file a reply to the plaintiff's response. We believe that plaintiff's complaint can be broadly read to include the claim argued in the plaintiff's response to the defendants' motion for summary judgment. Since the parties have not directly addressed whether this matter is one of public concern, we shall also leave this issue for another day. Once again, the parties should consider *Koch* in addressing this issue in the future.

■ The court shall now turn to the defendants' last argument on plaintiff's First Amendment claim. Defendants contend that there is no evidence in the record to support plaintiff's allegation that he was terminated in retaliation for the public statements he made in the summer and fall of 1984. The court shall not unduly lengthen this opinion with an exhaustive review of the evidence cited by both sides. The

question of whether plaintiff's speech was a substantial or motivating factor in the decision to terminate him is one of fact. *Wulf v. City of Wichita*, 883 F.2d 842, 857 (10th Cir.1989). In viewing the evidence in the light most favorable to the plaintiff, we cannot say that the defendants are entitled to summary judgment on this issue. *See Conaway v. Smith*, 853 F.2d 789, 799 (10th Cir.1988). We find sufficient evidence in the record to support the claim that plaintiff's speech was a substantial or motivating factor in the decision to terminate the plaintiff.

## II. Due Process

Defendants argue that plaintiff was not denied procedural due process because (1) he did not have a property interest in his employment, and (2) he was not deprived of any liberty interest since the reasons for his dismissal were not stigmatizing and were not publicly disseminated.

### A. Property Interest

The determination of whether a plaintiff has a property interest is a question of state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). "[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

The defendants' position is that plaintiff had a written contract for each year of his employment which contained an explicit provision concerning his term of his employment. Defendants argue that there is no evidence to suggest that plaintiff had a right to continued employment absent cause. Defendants contend that any oral assurances given the plaintiff that he would not be dismissed except for cause are barred by the parol evidence rule since plaintiff had a written contract.

Plaintiff admits that he had no formal tenure but argues that he had an implicit right to continued employment absent cause. Plaintiff bases this argument on

assurances he was given by defendant Deyoe before he signed two of the contracts that he would have continued employment with "satisfactory performance and continued availability of funds."

The court must turn to Kansas law to determine whether plaintiff had a property interest in his employment. The contracts signed by the plaintiff provided that plaintiff would be employed for a certain period. Plaintiff was admittedly not tenured and was employed for only a twelve-month period in each contract subject to renewal. Plaintiff seeks to produce evidence that he was told prior to signing two of the contracts that he would be renewed absent unsatisfactory job performance or inadequate funding. Such evidence is inadmissible under Kansas law. In *Steel v. Eagle*, 207 Kan. 146, 483 P.2d 1063, 1066 (1971), the Kansas Supreme Court set forth the familiar rules concerning the admissibility of parol evidence for the purpose of modifying a written contract:

The rule is well established that where parties carry on negotiations and subsequently enter into an agreement in writing with respect to the subject matter, all prior and contemporaneous negotiations are deemed to be merged into the written agreement which constitutes the contract between the parties. Where the agreement is complete, unambiguous, and free from uncertainty, parol or extrinsic evidence tending to vary or substitute a new and different agreement from the one evidenced by the writing is inadmissible. (Citations omitted.)

The court does not find any ambiguity in the instant contracts. The contracts provide for a specific term of employment and clearly indicate that tenure is not contemplated by the parties. The contracts further refer to the policies and regulations of KSU. These policies and regulations provide that employees such as plaintiff will be notified of non-renewal prior to December 15 of each year. Under similar circumstances, the Kansas courts have ruled that an employee does not have a property interest in his employment. *See Gragg v. U.S.D. No. 287*, 6 Kan.App.2d 152, 627 P.2d

335, 339 (1981). Moreover, other courts have rejected the argument made by the plaintiff here. *See, e.g., Hall v. Ford,* 856 F.2d 255, 266 (D.C.Cir.1988).

■ The court finds no merit to plaintiff's contention that the oral assurances somehow created an "implied-in-fact" contract. The Kansas Supreme Court has recognized an "implied-in-fact" contract exception for at-will employees (i.e., those employees without a contract for a specific duration). *See Morriss v. Coleman Co., Inc.,* 241 Kan. 501, 738 P.2d 841 (1987). However, this court has not discovered any Kansas case where an employee with a written contract was allowed to assert an additional "implied-in-fact" contract based on oral representations made prior to the signing of the contract. We believe that under these circumstances the Kansas courts would apply the aforementioned rules concerning parol evidence and merger. Accordingly, we find that the defendants are entitled to summary judgment on plaintiff's due process claim based on deprivation of a property interest.

*B. Liberty interest*

■ In *Miller v. City of Mission, Kansas,* 705 F.2d 368, 373 (10th Cir.1983), the Tenth Circuit summarized the standards governing the deprivation of a liberty interest:

" 'The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities.' " *Weathers v. West Yuma County School District R–J–1,* 530 F.2d 1335, 1338 (10th Cir.1976) (quoting *Lipp v. Board of Education,* 470 F.2d 802, 805 (7th Cir.1972)). *See also Board of Regents v. Roth,* 408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Abeyta v. Town of Taos,* 499 F.2d 323, 327 (10th Cir.1974). The manner in which a public employee is terminated may deprive him of either or both of these liberty interests. When the termination is accompanied by public dissemination of the reasons for dismis-

sal, and those reasons would stigmatize the employee's reputation or foreclose future employment opportunities, due process requires that the employee be provided a hearing at which he may test the validity of the proffered grounds for dismissal. *McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981); *Staton [v. Mayes],* 552 F.2d [908] at 911 [ (10th Cir. 1977) ].

Defendants contend that there is no evidence that the reasons for not renewing the plaintiff were disseminated to the public and that any reasons given by the defendants would not have stigmatized plaintiff's reputation or foreclosed his future employment opportunities. We agree.

Plaintiff has failed to come forward with any substantial evidence indicating that the reasons for his non-renewal were published. Plaintiff has indicated that he has "reason to believe" that defendant Deyoe made statements to others that plaintiff was having problems with the faculty and that Deyoe was not happy with his performance. These conclusory and unsupported allegations are insufficient to preclude the entry of summary judgment on this issue. Moreover, the reasons purportedly given by Deyoe for not renewing the plaintiff's employment would not have stigmatized plaintiff's reputation or foreclosed future employment opportunities. *See Conaway v. Smith,* 853 F.2d at 794 (discharge for neglect of duties and insubordination do not implicate liberty interest); *Sullivan v. Stark,* 808 F.2d 737, 739 (10th Cir.1987) (discharge of park ranger for neglect or dereliction of duty do not implicate liberty interest); *Bailey v. Kirk,* 777 F.2d 567, 572–73 (10th Cir.1985) (discharge of police chief for failure to investigate satisfactorily is insufficient to stigmatize for purposes of liberty interest); *Asbill v. Housing Authority of Choctaw Nation,* 726 F.2d 1499, 1503 (10th Cir.1984) (charge of disputing authority of a new agency director held not to stigmatize discharged employee); *Stritzl v. United States Postal Service,* 602 F.2d 249, 252 (10th Cir.1979) (poor work habits and low productivity held not to implicate liberty interest). Accord-

ingly, the defendants are entitled to summary judgment on this claim.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. # 12) be hereby denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Doc. # 43) be hereby granted in part and denied in part as set forth in this memorandum.

IT IS SO ORDERED.