**Peggy L. ZELLNER, Plaintiff,**

v.

**Geraldine G. HAM, Defendant.**

**Civ. A. No. 88–254–2–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

April 13, 1990.

---

M. Linda Mabry, Macon, Ga., for plaintiff.

Denmark Groover, Jr., Groover and Childs, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

Before this court is defendant's motion for summary judgment in the above-captioned matter. Plaintiff Zellner was employed as a deputy clerk by defendant Ham who was Clerk of the Superior Court of Monroe County. Plaintiff alleges that she was fired because she advised defendant Ham that she planned to run against defendant Ham for the position of Clerk of the Superior Court of Monroe County in the upcoming election. Plaintiff argues that she is entitled to relief on two separate grounds: (1) that she was terminated from her job by defendant in violation of her free speech rights as guaranteed by the First Amendment to the Constitution of the United States; and (2) that she has been deprived of a liberty interest without due process in violation of the Fourteenth Amendment to the Constitution of the United States. The court will first address the issue of whether plaintiff was terminated from her job in violation of her free speech rights as guaranteed by the First Amendment.

In the case of *Schneider v. Indian River Community College Foundation, Inc.*, 875 F.2d 1537 (11th Cir.1989), the Eleventh Circuit set forth the three-step test to be used when a public employee asserts a claim that he has been retaliated against for the exercise of his First Amendment rights: First, the public employee must show that the speech addresses a matter of public concern; second, the public employee must show that the speech was a "substantial or motivating" factor in the employment decision,[1] and; third, when both of the first two requirements have been established, the court will engage in the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ The court will now address the first step of the three-part test set forth above. Whether an employee's speech addresses a matter of public concern is determined by the content, form, and context of a given statement, as revealed by the record as a whole. *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708, 720 (1983). Candidacy for office and participation in political activities are forms of expression protected by the First Amendment. *United States v. Tonry*, 605 F.2d 144 (5th Cir.1979). Matters directly affecting an electoral campaign go directly to the heart of the democratic process. *Eiland v. City of Montgomery*, 797 F.2d 953 (11th Cir.1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). First Amendment protection applies not only to public communications, but also applies when a public employee arranges to communicate privately with his employer.[2] *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

■ Viewing the facts of the present case in light of the relevant case law, the court finds that plaintiff's speech does address a matter of public concern. Therefore, the court must now engage in the balancing test set forth in *Pickering*.

■ The balancing test set forth in *Pickering* is used to determine whether the employment decision in question was justified in light of the competing social interests at stake: "[T]he interest of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promotion the efficiency of the public services it performs through its employees."[3] *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734, 20 L.Ed.2d at 817. When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate, and an employer need not allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action. *Connick*, 461 U.S. at 152, 103 S.Ct. at 1692, 75 L.Ed.2d at 723.

In the case of *Wagner v. Hawkins*, 634 F.Supp. 751 (W.D.Ark.1986), the secretary to the county judge, the foreman of the county road crew, the county coordinator for emergency services, and the veterans service officer sued the county judge claim-

1. While not conceding that the termination of plaintiff was because she announced she would run against defendant in the upcoming election, defendant does concede, and this court agrees, that the evidence taken most strongly in favor of the plaintiff would authorize the conclusion that plaintiff's announcement was the triggering cause of plaintiff's termination. Therefore, the court need not address whether plaintiff's announcement was a "substantial or motivating" factor in the employment decision.

2. Although later in the campaign plaintiff Zellner's statements would become public, plaintiff alleges that she was fired as a result of having told defendant that she had decided to run against defendant for the position of clerk.

3. "When [an employee] speaks publicly, it is generally the *content* of his statements that must be assessed to determine whether they 'in any way ... impeded the [employee's] proper performance of his daily duties....'" "Private expression, however, may in some situations bring additional factors to the *Pickering* calculus. When a government employee personally confronts his immediate supervisor, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered." 439 U.S. at 416 n. 4, 99 S.Ct. at 696 n. 4, 58 L.Ed.2d at 624 n. 4.

ing that he fired them because they supported his opponent in the general election. The court dismissed these parties claims and reasoned that because of their relationship to the county judge, "these positions were ones of trust and confidence, the work of which was often unsupervised, so that the risk of deliberate disloyalty by those occupying them was not one that the county judge was required to run." *Wagner*, 634 F.Supp. at 754. With regard to the judge's secretary the court noted that the secretary had access to all of the material in the judge's office. In applying the balancing test set forth in *Pickering*, the court reasoned that the judge could not operate effectively while spending any significant amount of time worrying about any actual or threatened disruption of the conduct of the governmental operations for which he is responsible due to any possible political sabotage of the judge and his administration. *Id.*

In the case of *Waters v. Chaffin*, 684 F.2d 833 (11th Cir.1982), the Eleventh Circuit held that discipline of a police officer for remarks he made about the chief was unconstitutional where the police department did not make a showing of actual harm or a reasonable likelihood of harm to its efficiency, discipline, or harmony. In *Waters*, the police department defended its actions by arguing that the remarks interfered with the close working relationship between the plaintiff, Waters, and the chief. In rejecting this argument the Eleventh Circuit relied on the fact that at the time of the incident and thereafter, Waters and the chief did *not* work closely together; the evidence indicating that Waters ran into the chief at most only a few times a week.

In the case of *Terry v. Cook*, 866 F.2d 373 (11th Cir.1989), the Eleventh Circuit, noting that under Alabama law sheriff's deputies were the general agents of or alter egos of the sheriff and that any transaction within the scope of the sheriff's duties may be acted on by his deputy, held that the sheriff has absolute authority to decline to reinstate those deputies who did not support him. With regard to the sheriff's clerks, investigators, dispatchers, jail-

ers, and process servers, the Eleventh Circuit, noting that these positions traditionally revolve around limited objectives and do not require that those holding such positions function as the alter ego of the sheriff or ensure that the policies and goals of the office are implemented, remanded to the district court for a determination of the actual responsibilities of each position to determine whether political loyalty is an appropriate requirement for the effective performance of those jobs.

Under O.C.G.A. § 15–6–59, deputy clerks have the same powers and duties as the clerk of the court. *Hendrick v. Georgia*, 257 Ga. 17, 354 S.E.2d 433 (Ga.1987). This statute effectively makes deputy clerks the alter ego of the clerk just as the Eleventh Circuit held that under Alabama law, sheriff's deputies are the alter ego of the sheriff. The duties and responsibilities of the clerk and deputy clerks set forth in O.C.G.A. §§ 15–6–61 and 62 show the position of clerk to require a high level of responsibility in order to properly perform the many important functions of the office.

The matter before this court is not a case of the plaintiff's allegiance to another political party or of her support of another candidate running in opposition to her employer, like many of the cases in this area of the law. The matter before this court involves the narrow issue of the plaintiff herself being the candidate running in direct opposition to her employer for the job currently held by her employer. It is also unlike *Waters* where the Eleventh Circuit found there was no close working relationship between the plaintiff and defendant. In the matter before this court, plaintiff and defendant had a very close working relationship. The evidence shows that they both worked out of the very same office and that by law both had the same duties and responsibilities. Like the secretary to the judge in *Wagner*, plaintiff had access to all of the papers and records for which her employer was responsible.

Plaintiff argues that the court should consider the relationship between defendant and her employees in looking at the potential for disruption, and cites evidence

**1056**

of existing friction between defendant and her employees; however, in the court's opinion this shows that the potential for disruption is even greater. Furthermore, in plaintiff's application for unemployment insurance, filed as part of exhibit five to plaintiff's brief, plaintiff admits "I could understand under the circumstances that you [defendant] cannot work with me."

Due to the close working relationship between plaintiff and defendant, and the great potential for actual or threatened disruption of the fulfillment of the responsibilities and duties of the office of clerk, the court finds that the defendant employer was justified in terminating the plaintiff employee who was challenging her for the position currently held by defendant. In accordance with the relevant case law and the discussion above, this court GRANTS defendant's motion as it concerns the issue of whether plaintiff was terminated by defendant in violation of her free speech rights as guaranteed by the First Amendment.

The court will now address the issue of whether plaintiff has been deprived of a liberty interest without due process. Plaintiff contends that the liberty interest of which she was deprived is that of her good name and reputation, and that she is therefore entitled to a name clearing hearing under the due process clause. The standard for determining whether a plaintiff may prevail on a claim of deprivation of liberty interest without due process requires that the plaintiff prove the following: "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing." *Buxton v. Plant City, Florida,* 871 F.2d 1037 (11th Cir.1989). Plaintiff contends that defendant made public stigmatizing information in two ways; (1) by placing stigmatizing information in plaintiff's file at the Georgia Department of Labor, and (2) by statements and actions.

■ The court will first address the issue of whether the placing of stigmatizing information in plaintiff's file at the depart-

ment of labor violated the liberty interests of plaintiff. Plaintiff relies on *Buxton,* which held that "the presence of stigmatizing information placed into the public record by a state entity, pursuant to a state statute or otherwise, constitutes sufficient publication to implicate the liberty interest." However, throughout the Eleventh Circuit's opinion in *Buxton,* the court relies on the fact that the file in question was a "non-confidential" and "public" record. Such is not the case in the matter before this court. O.C.G.A. § 34–8–11 provides that all letters, reports, communications, or any other matters between the department of labor and an employer "shall be absolutely privileged." Therefore, the placing of the separation notice in the confidential files of the department of labor does not constitute the "making public" of the information contained therein.

■ Although the court has found that the information on the separation notice filed with the department of labor was not "made public", the court also notes that plaintiff fails to meet the standard set forth in *Buxton* in another respect. For a charge to be "stigmatizing" it must be worse than merely adverse; it must be such as would give rise to "a 'badge of infamy,' public scorn or the like." *United States v. Lewis,* 743 F.2d 1127 (5th Cir. 1984) (quoting *Ball v. Board of Trustees of Kerrville Independent School District,* 584 F.2d 684 (5th Cir.1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1535, 59 L.Ed.2d 788 (1979)). The characterization of an employee as one possessed of "poor work habits and low productivity" does not amount to a "badge of infamy" nor does it amount to a type of "stigma" recognized as requiring a name clearing hearing. *Stritzl v. United States Postal Service,* 602 F.2d 249 (10th Cir.1979). On the separation notice filed with the department of labor, under the heading entitled reason for separation, the reason given merely states "[u]nsatisfactory job performance." While this statement is certainly adverse, it in no way rises to the level of such that would give rise to a "badge of infamy, public scorn or the like." Therefore, the court also finds that plain-

tiff does not meet the requirement that the statement be "stigmatizing."

 The court will now consider the remaining issue of whether defendant made public stigmatizing information about plaintiff by defendant's statements and actions. Plaintiff alleges that the hiring of two deputies to prevent plaintiff from going into the clerk's office the night after she was fired amounts to the making public of stigmatizing information about plaintiff.

Defendant admits in her deposition that because of plaintiff's behavior at the office after learning of her termination, defendant became concerned that plaintiff "might go back to the office and do something to the office" and that for this reason she hired two men to deny access to plaintiff if she should have returned. It is undisputed that in hiring the two men defendant called the husband of the tax commissioner to get the two men. It is also undisputed that defendant called the chief deputy to ask him to be in her office the next morning because plaintiff said she was coming back and defendant "didn't know what to expect of her."

Plaintiff cites the case of *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446–47 (2d Cir.1980), for the proposition that deliberate acts designed to create a stigmatizing impression of the employee meet the make public requirement as does a scheme of innuendo which creates a stigmatizing impression. A litigant opposing summary judgment may not rest upon mere conclusory allegations or denials but must bring to the court's attention some affirmative indication that his version of the relevant events are not fanciful. *Quinn,* 613 F.2d at 445. In the matter presently before this court plaintiff fails to demonstrate evidence that defendant's actions were performed to deliberately create a stigmatizing impression about plaintiff rather than out of a concern for safeguarding the records for which defendant was responsible.

When asked what derogatory statements defendant made about plaintiff, plaintiff responded with the unsupported general conclusion that "it was common knowledge that she felt I was capable of criminal actions." Plaintiff does not allege any specific statement made by defendant to any particular person. The court is unable to find that any of defendant's actions or statements amount to a "making public" by defendant of any "stigmatizing" information about plaintiff. In accordance with the relevant case law and the discussion above, this court GRANTS defendant's motion for summary judgment.

SO ORDERED.